IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL KEVIN BROWN,** ) | |
| Plaintiff ) | C.A. No. 09-268 Erie |
| ) | |
| v. ) | |
| ) | Magistrate Judge Baxter |
| **VENANGO COUNTY, et al.,** ) | |
| Defendants. ) | |

## OPINION AND ORDER[1]

United States Magistrate Judge Susan Paradise Baxter

### I.  INTRODUCTION

#### A.  Relevant Procedural History

On October 22, 2009, Plaintiff Michael Kevin Brown, a former inmate at the Venango County Prison ("VCP") in Franklin, Pennsylvania, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Named as Defendants are:  Venango County ("Venango"); Gene Prise, Sheriff of Venango County ("Prise"); Major Smith, Warden at VCP ("Smith"); Amy Johnston, Venango County Public Defender ("Johnston"); John Doe, Business Office Manager at VCP ("J. Doe"); Debbie Bigley, Business Office Administrative Assistant at VCP ("Bigley"); Peggy Miller, Venango County Office of the Clerk of Court and Prothonotary ("Miller"); Cathy Lackatos, Jail Advocate at VCP ("Lackatos"); and four unnamed deputies, each identified as "Doe."

In his complaint, Plaintiff claims that Defendants violated and/or conspired to violate his rights under the fourth, fifth, sixth, and fourteenth amendments to the United States Constitution, as well as his rights under the Uniform Criminal Extradition Act, 42 Pa.C.S.A. § 9121, *et seq*. ("UCEA"), and the Interstate Agreement on Detainers Act, 42 Pa.C.S.A. § 9101, *et seq*. ("IADA"), when he was transferred from the North Eastern Ohio Correction Center ("NEOCC")

---

[1] All parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 10, 30, 31].

to VCP on or about April 16, 2009.

On May 7, 2010, Defendant Johnston filed a motion to dismiss or, in the alternative, for a more definite statement [ECF No. 26], arguing that: (i) she is not a state actor and is, thus, immune from Plaintiff constitutional claims under 42 U.S.C. § 1983; (ii) Plaintiff has no cognizable claim under either the UCEA or the IADA; and (iii) Plaintiff has otherwise failed to state a claim upon which relief may be granted.[2] Despite being given ample time to do so, Plaintiff has failed to file a response to Defendant Johnston's motion. This matter is now ripe for consideration.

### B. Relevant Factual History[3]

On or about July 28, 2008, Plaintiff was stopped in the Borough of Sugar Creek, Venango County, Pennsylvania, and charged with driving under the influence ("DUI"), after which he was released on his own recognizance. (ECF No. 6, Complaint, at p. 2). As a result of the DUI charge, Plaintiff was found guilty of violating the terms of the federal supervised release he was serving from a prior conviction, which caused him to serve approximately four months in the Erie County Prison and the NEOCC. (Id.). After serving the four-month sentence, Plaintiff reported to the Sugar Creek Police Department to be "booked" on the DUI charge. (Id.). Plaintiff was thereafter released on December 15, 2008. On or about December 28, 2008, Plaintiff was arrested on a bench warrant issued by the Venango County Court of Common Pleas for his failure to appear at a scheduled hearing on the DUI charge. (Id.). Plaintiff posted bail and was released. In January 2009, Plaintiff appeared in the Venango County Court and entered a plea of

---

[2] The remaining Defendants have filed an answer and affirmative defenses in response to Plaintiff's complaint. [ECF No. 33]. As a result, Plaintiff's claims against all Defendants other than Defendant Johnston will not be addressed herein.

[3] The factual history set forth herein is derived from the allegations of Plaintiff's complaint, which are accepted as true for purposes of deciding Defendant Johnston's motion to dismiss.

2

"not guilty" to the DUI charge. (Id.).

On or about March 4, 2009, Plaintiff was arrested again for violating the terms of his federal supervised release and was ultimately sentenced to serve a term of nine months' imprisonment. (Id.). Plaintiff began serving the nine-month sentence at the Erie County Prison, but was then transferred to the NEOCC. (Id.). At that point, Plaintiff discovered that a bench warrant had been issued for his arrest in Venango County. He immediately contacted Defendant Johnston and asked her to have the bench warrant removed, which she did successfully. (Id.).

On or about April 16, 2009, Plaintiff was transferred from the NEOCC to VCP pursuant to an "Order for Transport," executed by the Court of Common Pleas of Venango County, which directed the Venango County Sheriff to transport Plaintiff to Venango County to appear at a call of the list on April 20, 2009. (Id.; ECF No. 6-1 at p. 6, ¶ 1). The Order specified that it was a "Writ of Habeas Corpus" that was authorized by Assistant U.S. Attorney Christine Sanner, Erie Branch of the U.S. Attorney's Office. (ECF NO. 6-1 at p. 6, ¶ 5). The Order further specified that Plaintiff was to be returned to the NEOCC upon completion of his court appearance. (Id. at ¶ 4).

On April 20, 2009, Plaintiff pled guilty to the DUI charge in Venango County and was sentenced on April 28, 2009, to serve a term of 3 to 6 months of incarceration to run concurrently with his federal sentence. (ECF No. 6-1 at p. 12). Plaintiff was later returned to the NEOCC on or about June 16, 2009. (ECF No. 6, Complaint, at p. 3; ECF No. 6-1 at p. 15).

Plaintiff alleges that Defendant Johnston, "acting alone and in collusion with" the other Defendants, "did in fact draft a document entitling it a "Motion to Transport" which was used to obtain custody, unlawful custody, of [Plaintiff], who was in federal custody, within a federal enclave, in another state, thus entitling him to all of the rights, state and federal that apply to him." (ECF No. 6, Complaint, at p. 3). As a result, Plaintiff claims that his rights under the UCEA and IADA were violated, and that he was "deprived of his 4th Amendment right to be free from unlawful seizure, of the 5th Amendment[] right to have formal proceeding initiated against

3

him in a proper forum, the 6th Amendment[] guarantee of effective and adequate assistance of counsel in any and all phases of a criminal proceeding brought against him, and of the Due Process Clause of the 14th Amendment." (Id.).

### C. Standards of Review

#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d

4

Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."
>
> * * *
>
> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).

### **2.** *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552,

555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### D.  Discussion

#### 1.  State Actor

Defendant Johnston first argues that Plaintiff's Section 1983 claims against her must be dismissed because, as a public defender, she is not a state actor and, thus, is not liable under 42 U.S.C. § 1983. It is well-settled that a "public defender does not act under color of state law [within the meaning of Section 1983] when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk County v. Dodson, 454 U.S. 312, 325 (1981); Black v. Bayer, 672 F.2d 309 (3d Cir. 1982); Cooper v. Turner, 1987 WL 11481 at *1 (E.D.Pa. May 27, 1987). See also Briscoe v, LaHue, 460 U.S. 325, 330 (1983)("even though the defective performance of defense counsel may cause the trial process to deprive an accused person of his liberty in an unconstitutional manner ... the lawyer who may be responsible for the unconstitutional state action does not himself act under color of state law within the meaning of § 1983"). Here, the actions alleged to have been taken by Defendant Johnston fall within the ambit of a lawyer's traditional function as criminal defense counsel. Thus, Defendant Johnston is immune from liability for any such actions she is alleged to have taken on her own accord.

### 2. **Conspiracy**

Notwithstanding the foregoing, a private action may be converted into state action if a private individual conspires with a state official to deprive a plaintiff of his constitutional rights. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970). The requisite state action may be found even if the state actor with whom the private individual allegedly conspired is himself immune from suit. Dennis v. Sparks, 449 U.S. 24, 27-28 (1980)(action against private parties accused of conspiring with judge found to be state action under Section 1983). Thus, Defendant Johnston's alleged conduct may be actionable under Section 1983 if, but only if, Plaintiff can demonstrate that she conspired and acted jointly with one or more state official(s) to violate Plaintiff's constitutional rights.

Here, Plaintiff alleges that, by participating in his transfer from the NEOCC to VCP on or about April 16, 2009, Defendant Johnston "conspired" with other state officials to deprive him of his Fourth, Fifth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1985(3), which provides, in pertinent part, as follows:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Like Section 1983, Section1985 provides no substantial rights itself, but merely "provides a remedy for violation of the rights it designates." Great American Federal Savings and Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979). Thus, the success of Plaintiff's Section 1985 conspiracy claim against Defendant Johnston requires a showing that Plaintiff was deprived of a federally protected right. See Moire v. Temple University School of Medicine, 613 F.Supp.

7

1360, 1366 (E.D.Pa. 1985)("success of Plaintiff's § 1985(3) claim must be dependent upon the success of her underlying § 1983 claim").  Accordingly, Plaintiff's underlying Section 1983 claims under the Fourth, Fifth, and Fourteenth Amendments must be examined to determine whether any of Plaintiff's federally protected rights have been violated.

### a. Fourth Amendment Claim

Plaintiff asserts that his transfer from the NEOCC to VCP on or about April 16, 2009, constituted an illegal "seizure" in violation of his Fourth Amendment rights. (ECF No. 6, Complaint, at p. 3).  However, it is apparent from Plaintiff's allegations that he was already in federal custody at the NEOCC at the time he was transferred to VCP.  Thus, he is precluded from claiming that the challenged transfer constituted an illegal "seizure" in violation of his Fourth Amendment rights, since he had already been "seized" for purposes of the Fourth Amendment. See Goldhaber v. Higgins, 576 F.Supp.2d 694, 717-18 (W.D.Pa. 2007)("the Court cannot conceive of a situation in which an incarcerated inmate ... could be subjected to a distinct Fourth Amendment seizure" when he had already been "seized for purposes of the Fourth Amendment").  Accordingly, Plaintiff has failed to state a cognizable Fourth Amendment claim, and Plaintiff's conspiracy claim against Defendant Johnston based upon an alleged Fourth Amendment violation must be dismissed.

### b. Due Process Claim under the Fifth and Fourteenth Amendments

Plaintiff claims that he was denied due process because he was transferred from the NEOCC to VCP on or about April 16, 2009, without "a formal proceeding initiated against him in a proper forum." (ECF No. 6, Complaint, at p. 3).  In particular, Plaintiff alleges that he was deprived of his right to receive a pre-transfer hearing under the IADA, and/or proper extradition procedures under the UCEA. (Id. at p. 4-7).  In response, Defendant Johnston argues that the transfer at issue was not governed by any of the procedures set forth in either the UCEA or the

IADA, because Plaintiff was not extradited and no detainer was ever issued. Thus, to determine whether Plaintiff has stated a cognizable due process claim, it is necessary to examine the applicability of the UCEA and/or the IADA to the underlying circumstances at issue in this case.

### i.    UCEA

Section 9123 of Pennsylvania's UCEA provides, in pertinent part, as follows:

> ... it is the duty of the Governor of this Commonwealth to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony or other crime, who has fled from justice and is found in this Commonwealth.

42 Pa.C.S.A. § 9123. Thus, by its terms, the UCEA governs the extradition of persons who have fled to this Commonwealth after having been charged with committing a crime in another state. Such is not the case here. This case merely involves Plaintiff's transfer from federal custody to state custody, which neither constitutes an extradition, nor falls within the purview of the UCEA. In addition, the United States is not a party to the UCEA, so that any transfer from or to federal custody is not subject to the procedures outlined in the Act. See Com. ex rel. Patton v. Tees, 118 A.2d 585 (Pa.Super. 1955)(recognizing that UCEA has application only between states that adopted it and cannot be invoked to regulate the procedure by which an inmate is transferred between federal and state custody).

Accordingly, Defendants were not bound to follow the UCEA's procedures in connection with Plaintiff's transfer from the NEOCC to VCP on or about April 16, 2009.

### ii.    IADA

The IADA prescribes procedures by which a member State (defined as including the United States) may obtain for trial a prisoner incarcerated in another member jurisdiction and by which the prisoner may demand the speedy disposition of certain charges pending against him in another jurisdiction. In either case, the provisions of the Agreement are triggered only when a

9

"detainer" is filed with the custodial State by another State having untried charges pending against the prisoner. Here, Plaintiff acknowledges in his complaint that "[a]t no time was a detainer placed upon [him]." (ECF No. 6, Complaint, at p. 2). In fact, the Order for Transport attached as Exhibit 3 to the complaint clearly states that it constituted a "Writ of Habeas Corpus" that was "authorized by the Assistant U.S. Attorney Christine Sanner, Erie Branch of the U.S. Attorney's Office." (ECF NO. 6-1 at p. 6).

In United States v. Mauro, 436 U.S. 340 (1978), the Supreme Court drew a legal distinction between a writ of *habeas corpus ad prosequendum* and a detainer:

> Unlike a writ of habeas corpus *ad prosequendum*..., a detainer may be lodged against a prisoner on the initiative of a prosecutor or law enforcement officer. Rather than requiring the immediate presence of the prisoner, a detainer merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his release from prison. Further action must be taken by the receiving State in order to obtain the prisoner.

436 U.S. at 358. Based on this distinction, the Court held that "a writ of habeas corpus *ad prosequendum* is not a detainer for purposes of the [IADA]." Id. at 361. The Court then concluded that "[b]ecause ... the Government never filed a detainer against [the plaintiffs], the Agreement never became applicable and the United States was never bound by its provisions." Id. at 361. See also Commonwealth v. Diggs, 416 A.2d 1119 (Pa.Super. 1979)(holding that IADA procedures were not triggered by writ of habeas corpus *ad prosequendum*). The same reasoning applies here.

Because Plaintiff was transferred from federal to state custody by virtue of a writ of habeas corpus *ad prosequendum*, without any detainer having been issued, the procedural protections afforded by the IADA did not apply.

Based on the foregoing, therefore, Plaintiff has failed to state a cognizable due process claim based upon Defendants' alleged failure to follow the procedures set forth in either the UCEA or the IADA, as neither Act was applicable to the transfer of custody at issue. Accordingly, Plaintiff's conspiracy claim against Defendant Johnston based upon alleged due

process violations must be dismissed. Additionally, for the same reasons, Plaintiff's claims based upon Defendant Johnston's alleged failure to comply with the UCEA and/or IADA will also be dismissed.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL KEVIN BROWN,** | ) | |
| Plaintiff | ) | C.A. No. 09-268 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| **VENANGO COUNTY, et al.,** | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this ___ day of December, 2010,

IT IS HEREBY ORDERED that Defendant Johnston's Motion to Dismiss Complaint [ECF No. 26] is GRANTED, and all claims against Defendant Johnston are hereby DISMISSED. Defendant Johnston's alternative Motion for a More Definite Statement [ECF No. 26] is dismissed as moot. The Clerk is directed to terminate Defendant Johnston as a Defendant in this case.

<pre>
                              S/Susan Paradise Baxter
                              SUSAN PARADISE BAXTER
                              United States Magistrate Judge
</pre>